United States District Court
Southern District of Texas

**ENTERED**

October 07, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANGELA RENEE LOPEZ,                  §
                                     §
        Plaintiff,                   §
                                     §
v.                                   §   CIVIL ACTION NO. H-15-3077
                                     §
HARRIS COUNTY, TEXAS, and            §
FRANCISCO SALAZAR, JR.,              §
IN HIS INDIVIDUAL AND                §
OFFICIAL CAPACITIES,                 §
                                     §
        Defendants.                  §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Angela Renee Lopez, brings this action against Harris County, Texas, and Deputy Francisco Salazar, Jr. ("Deputy Salazar") in both his individual capacity and in his official capacity as a Harris County Deputy Sheriff, for claims based on both federal and state law arising from an alleged excessive use of force when Deputy Salazar responded to her call for assistance during a family argument.[1]  Pending before the court is Defendants' Motion for Summary Judgment (Docket Entry No. 17).  For the reasons explained below, defendants' motion will be granted, and this action will be dismissed.

## I.  Factual and Legal Allegations

Plaintiff alleges that on August 16, 2014, Deputy Salazar was dispatched to her residence in response to her call for assistance

---

[1]See Plaintiff's First Amended Petition, Docket Entry No. 11.

during an argument with her 19-year old daughter, Stephanie Lopez. Plaintiff alleges that the argument started when she asked Stephanie and her boyfriend to leave the home, but they refused. Plaintiff alleges that the argument turned violent when Stephanie bit her. Plaintiff alleges that she had called the police for help in the past when a house guest refused to leave her home, and an officer had assisted her in removing the guest without incident.[2]

Plaintiff alleges that when Deputy Salazar arrived at her home, he entered without knocking and shouted at her to give him her identification. Plaintiff alleges that Deputy Salazar ordered her to step out of the house so that he could talk to Stephanie but that she refused and told him that he could talk to Stephanie outside but she was staying inside. Plaintiff alleges that Stephanie went outside and waited for Deputy Salazar who again shouted at plaintiff to give him her identification. Plaintiff alleges that when she reached for her phone to call another officer, Deputy Salazar grabbed her arm, dragged her outside, pushed her to the ground, sat on her, and pulled her arms behind her back so he could  handcuff her.  Plaintiff alleges that once she was handcuffed, Deputy Salazar pulled her up by her handcuffs, and placed her in the back of his patrol car.  Plaintiff alleges that after she spent approximately a half hour in Deputy Salazar's hot patrol car, she was transported to the Inmate Processing Center

---

[2]Id. at 2.

where she stayed for hours until she was released without charge.[3]

Plaintiff alleges that Deputy Salazar used excessive force to arrest her in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and the laws of the State of Texas. Plaintiff alleges that Harris County is liable to her based on its alleged failure to train and supervise Deputy Salazar whose actions followed an unconstitutional policy ordered, sanctioned, and ratified by Harris County through one or more of its policymakers.[4] Plaintiff alleges that she suffered permanent injuries to her shoulder and wrist,[5] and that

> [a]s a direct and proximate result of the above described conduct of agents and employees of Harris, County, including Deputy Salazar, [she] suffered significant injuries and damages, including physical pain, mental anguish, physical impairment, disfigurement, and loss of enjoyment of life, and she has incurred medical expenses for the treatment of her injuries in the past, and she will, in all likelihood, incur medical expenses in the future for the continued treatment of her injuries.[6]

Plaintiff seeks compensatory and punitive damages, costs, and attorneys fees.[7]

_____

[3] Id. at 2-4.

[4] Id. at 5.

[5] Id.

[6] Id. at 6.

[7] Id. at 5-7.

-3-

## II. **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).   If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id.  Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  Id.

-4-

### III. **Defendants' Motion for Summary Judgment**

Defendants argue that they are entitled to summary judgment on all of plaintiff's claims because plaintiff is unable to present evidence capable of supporting any of the claims alleged.[8] Over two months have passed since defendants filed the pending motion for summary judgment on August 1, 2016. More than six weeks have passed since plaintiff's response to the pending motion was due. But plaintiff has not responded to defendants' motion. Local Rule 7.3 provides that: "Opposed motions will be submitted to the judge 21 days from filing without notice from the clerk and without appearance by counsel." S.D. Tex. R. 7.3 (2000) (Amended by General Order 2009-17, effective December 1, 2009). Local Rule 7.4 provides:

> Failure to respond will be taken as a representation of no opposition. Responses to motions
>
> A. Must be filed by the submission day;
>
> B. Must be written;
>
> C. Must include or be accompanied by authority; and
>
> D. Must be accompanied by a separate form order denying the relief sought.

S.D. Tex. R. 7.4 (2000). In accordance with Local Rule 7.4, the court takes plaintiff's failure to respond to the defendants' motion for summary judgment as a representation of no opposition to defendants' summary judgment evidence.

---

[8]Defendant's Motion for Summary Judgment, Docket Entry No. 17.

-5-

Although a district court may not grant summary judgment by default simply because there is no opposition to the motion, the court may accept as undisputed the movant's version of the facts and grant a motion for summary judgment when the movant has made a prima facie showing of entitlement to judgment as a matter of law. See John v. State of Louisiana (Board of Trustees for State Colleges and Universities), 757 F.2d 698, 708 (5th Cir. 1985) (when the movant's summary judgment evidence establishes its right to judgment as a matter of law by establishing that there are no genuine issues of material fact, the district court is entitled to grant summary judgment); and Eversley v. Mbank Dallas, 843 F.2d 172, 174 (5th Cir. 1988)(when the nonmovant fails to respond to a motion for summary judgment, the court does not err by granting the motion when the movant's submittals make a prima facie showing of entitlement to judgment as a matter of law).

## A.  Federal Law Claims

Plaintiff alleges that intentional actions of Deputy Salazar make him liable under 42 U.S.C. § 1983 for infringing her rights to be free from excessive force in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by depriving her of the right to be free from an unreasonable seizure that proximately caused her to suffer severe injury; and that Harris County is liable for Deputy Salazar's deprivation of her

constitutional rights for failing to adequately train and supervise him, and for having a policy, custom, or practice that allowed him to use excessive force.[9]  Defendants seek summary judgment on all of the claims asserted against them because plaintiff has not suffered any deprivation of rights secured by the Constitution or laws of the United States, Deputy Salazar is entitled to qualified immunity from suit, and plaintiff is unable to cite any evidence capable of proving that a county custom, policy, or practice caused the plaintiff to suffer deprivation of a right secured by the Constitution or laws of the United States.[10]

1.    Applicable Law

(a)   42 U.S.C. § 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

---

[9]Plaintiff's First Amended Petition, Docket Entry No. 11, pp. 5-6.

[10]Defendant's Motion for Summary Judgment, Docket Entry No. 17, p. 2 ¶ 2 ("Defendants deny that any constitutional violation occurred, or that they are liable to Plaintiff in any amount, under any theory.").

> injured in an action at law, suit in equity, or other
> proper proceeding for redress, except that in any action
> brought against a judicial officer for an act or omission
> taken in such officer's judicial capacity, injunctive
> relief shall not be granted unless a declaratory decree
> was violated or declaratory relief was unavailable. . .

42 U.S.C. § 1983.   "[Section] 1983 'is not itself a source of
substantive rights,' but merely provides 'a method for vindicating
federal rights elsewhere conferred.'" Graham v. Conner, 109 S. Ct.
1865, 1870 (1989) (quoting Baker v. McCollan, 99 S. Ct. 2689, 2694
n.3 (1979)).   To establish § 1983 liability, plaintiff must prove
that she suffered "(1) a deprivation of a right secured by federal
law (2) that occurred under color of state law, and (3) was caused
by a state actor." Victoria W. v. Larpenter, 369 F.3d 475, 482
(5th Cir. 2004) (citing Bush v. Viterna, 795 F.2d 1203, 1209 (5th
Cir. 1986)).   Plaintiff must also show that the constitutional or
statutory deprivation she suffered was intentional or due to
deliberate indifference and not the result of mere negligence. Id.
(citing Baker, 99 S. Ct. at 2695).

### (1)  § 1983 Suits Against Governmental Entities

A governmental entity can be sued and subjected to monetary
damages and injunctive relief under § 1983 only if its official
policy or custom causes a person to be deprived of a federally
protected right.  Monell v. Department of Social Services of the
City of New York, 98 S. Ct. 2018, 2037-38 (1978) (§ 1983).   A
municipality may not be held liable under § 1983 on the basis of

-8-

respondeat superior or vicarious liability.  Municipal liability under § 1983 requires proof of (1) a policy maker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom.  Id.  See also Cox v. City of Dallas, Texas, 430 F.3d 734, 748 (5th Cir. 2005), cert. denied, 126 S. Ct. 2039 (2006) ("Municipal liability under both § 1981 and § 1983 requires proof of three elements in addition to the underlying claim of a violation of rights: 'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'").  Section 1988 allows courts to award attorneys' fees to prevailing parties in civil rights actions.  See Farrar v. Hobby, 113 S. Ct. 566, 571-72 (1992).

### (2)  § 1983 Suits Against Public Officials

Public officials may be sued pursuant to 42 U.S.C. § 1983 in their official and/or their personal capacities.  Hafer v. Melo, 112 S. Ct. 358, 361-63 (1991) (citing Kentucky v. Graham, 105 S. Ct. 3099 (1985)).

> [T]he distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device." . . State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. . . By contrast, officers sued in their personal capacity come to court as individuals.  A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

<u>Id.</u> at 362.  The real party in interest in an official-capacity suit is the governmental entity, not the named official.  <u>Id.</u> at 361 (citing <u>Graham</u>, 105 S. Ct. at 3105 ("Suits against state officials in their official capacity . . . should be treated as suits against the State.")).  <u>See also</u> <u>Bennett v. Pippin</u>, 74 F.3d 578, 584 (5th Cir.), <u>cert. denied</u>, 117 S. Ct. 68 (1996) ("When Mrs. Bennett sued the Sheriff in his individual and official capacity, she sued two defendants:  the Sheriff and the County."). <u>See also</u> <u>Turner v. Houma Municipal Fire and Police Civil Service Board</u>, 229 F.3d 478, 483 (5th Cir. 2000) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' . . Accordingly, a § 1983 suit naming defendants in only their 'official capacity' does not involve personal liability to the individual defendant.") (citations omitted).

To state a personal-capacity claim under § 1983 plaintiffs must allege that while acting under color of state law an individual defendant was personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that defendant's wrongful actions were causally connected to such a deprivation.  <u>James v. Texas Collin County</u>, 535 F.3d 365, 373 (5th Cir. 2008).  Absent personal involvement or notice, supervisors cannot be held liable for a subordinate's actions.  <u>Id.</u>

(b) Elements of Claims for Excessive Use of Force

Plaintiff alleges that Deputy Salazar used excessive force to arrest her in violation of the Fourth and Fourteenth Amendments.[11] To state a claim for the use of excessive force under the Fourth and Fourteenth Amendments, plaintiff must first allege facts capable of showing that she suffered a seizure. See Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004) (citing Graham, 109 S. Ct. at 1871). See also Tennessee v. Garner, 105 S. Ct. 1694, 1700 (1985) (claim of excessive force to effect arrest analyzed under Fourth Amendment standard). Plaintiff must then allege facts capable of showing that she suffered (1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. Flores, 381 F.3d at 396. See also Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996) (same). "[T]he question [is] whether the totality of the circumstances justified" that use of force. Garner, 105 S. Ct. at 1700. See also Ikerd, 101 F.3d at 434 ("The amount of force that is constitutionally permissible . . . must be judged by the context in which that force

---

[11]Plaintiff also alleges that Deputy Salazar's actions violated the Fifth Amendment, but the Fifth Amendment applies only to violations of constitutional rights by the United States or by a federal actor. See Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996). Plaintiff has not alleged that any of the defendants were acting under authority of the federal government. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's Fifth Amendment claims. See Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000).

-11-

is deployed."). In Graham, 109 S. Ct. at 1865, the Supreme Court articulated three guideposts for courts to use when determining if a particular use of force was reasonable under the circumstances or excessive to the need. These guideposts — often referred to as the Graham factors — are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to police officers or civilians; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene. Id. at 1872. The Graham factors provide the framework for judging whether an officer's use of force was excessive. Newman v. Guedry, 703 F.3d 757, 761 (5th Cir. 2012), cert. denied, 134 S. Ct. 162 (2013).

### 2.   Application of the Law to the Undisputed Facts

#### (a)   § 1983 Claims Asserted Against Deputy Salazar

##### (1)  Official Capacity Claims

Plaintiff has asserted § 1983 claims against Deputy Salazar in both his individual and his official capacities. Plaintiff's claims against Deputy Salazar in his official capacity are in essence claims against Harris County. See Graham, 105 S.Ct. at 3105. See also Goodman v. Harris County, 571 F.3d 388, 396 (5th Cir. 2009), cert. denied, 130 S. Ct. 1143 and 1146 (2010) ("official capacity suits are really suits against the governmental entity"). Since Harris County is already named as a defendant in this action, plaintiff's § 1983 claims against Deputy Salazar in

-12-

his official capacity are subject to dismissal because Harris County is the real party in interest. See Bennett, 74 F.3d at 584 ("A suit against the Sheriff in his official capacity is a suit against the County."). Accordingly, the court concludes that defendants are entitled to summary judgment on the claims asserted against Deputy Salazar in his official capacity.

### (2) Individual Capacity Claims

Defendants do not challenge plaintiff's allegations of injury from Deputy Salazar's use of force. Instead, defendants' argue that Deputy Salazar's use of force did not violate plaintiff's constitutionally guaranteed rights because his use of force was not clearly excessive to the need or objectively unreasonable under the circumstances.[12] Defendants argue that Deputy Salazar's use of force was reasonably proportionate to the circumstances because plaintiff committed a violation of state law by remaining in the room and interrupting Deputy Salazar's interview with her daughter, Stephanie,[13] and because plaintiff resisted arrest by struggling with Deputy Salazar and by refusing to comply with his orders to

---

[12]Defendants' Motion for Summary Judgment, Docket Entry No. 17, pp. 13-16 ¶¶ 20-27.

[13]Id. at p. 6 & n. 3 (citing Affidavit of Jay O. Coons, Ph.D., Docket Entry No. 17-2, pp. 11-12 ¶¶ 18-20, and Texas Penal Code § 38.15 Interference with Public Duties).

give him her hands so that he could safely handcuff her.[14]
Asserting that Deputy Salazar "maintained a calm demeanor and used
measured physical measures to overcome Plaintiff's resistance and
bring her into custody,"[15] defendants argue that

> after officer presence and verbal task directions . . .
> failed to gain Plaintiff's compliance, Deputy Salazar
> employed empty hand (soft technique) grabs, holds and
> joint locks to control Plaintiff. . . Deputy Salazar's
> use of force against Plaintiff was a reasonable and
> measured attempt to gain custody of her and accomplish
> her detention. . . Deputy Salazar's use of force in this
> incident was minimal, appropriate and reasonable given
> both the level of resistance directed at him and the
> stature of Plaintiff vis-à-vis Deputy Salazar.[16]

In support of their version of the facts, defendants have submitted
the Incident Report prepared by Deputy Salazar on the day of the
events at issue, a cell-phone video of Deputy Salazar's use of
force against the plaintiff produced by the plaintiff to the
defendants, and the affidavits of Deputy Salazar and Jay O. Coons,
Ph.D., Commander, District Five, Patrol Bureau for the Harris
County Sheriff's Office.

In pertinent part, Deputy Salazar's Incident Report states:

> While on patrol I was dispatched to 3418 Hurlingham
> Street in reference to a family disturbance.
>
> Upon arrival I heard two females arguing inside the
> residence. I made contact with the first female who
> opened the door. I asked her what was going on, she

---

[14]Id. at 4 ¶ 8 and 14 ¶ 22.

[15]Id. at 15 ¶ 26.

[16]Id. at 15-16 ¶ 26.

-14-

stated she . . . had been assaulted by her daughter.  I
asked for her identification, she stated it was in
another room, I asked her to retrieve the identification
to prevent further argument between both parties.  The
female did not attempt to get her identification instead
she continued to argue with the second female.

I attempted to speak with the second half of the
disturbance, she identified verbally as Ms. Stephanie
Lopez DOB . . .   While speaking with Stephanie, she
advised they had both been physically hitting each other,
over an argument of trash in the house.  Stephanie stated
the female was her mother.  Stephanie stated she had been
punched several times by her mother.  She stated she bit
her mother on the leg to get her to stop hitting her.

While speaking to Stephanie the first female began to
interrupt my interview.  I asked the female several times
to retrieve her identification and she would not.   I
demanded the female's identification as they both were
lawfully detained due to the family violence.  The female
stated [that she] did not want to give it to me and she
did not have to.  I advised her of the consequences and
she stated she would not give me her identification.

I began to detain the female and she began to resist. She
began to pull away and attempt to pull back into the
residence.  The female was pulled outside where I pulled
her to the ground to gain control and place her in
handcuffs.  The female continued to resist pulling her
left arm under her body.  The female was given several
orders to give me her hands.  The female was placed in
handcuffs without further incident and secured in my
patrol vehicle. . .

I spoke with Mr. Jacob Rojas, Stephanie's boyfriend.
Mr. Rojas stated he [had] observed both females fighting
in the living room.  He stated he was not sure why the
fight occurred but it is an on going situation at the
residence.   I asked for someone at the residence to
locate the female[']s identification for me, Stephanie
was able to locate the female[']s drivers license.  She
was identified as Ms. Angela Lopez.

I contacted the Harris County District Attorney's Office
and spoke with ADA Acklin.  ADA Acklin was given the
details of the incident for the family violence and
declined due to mutual combat o[f] both parties.  ADA

-15-

> Acklin accepted the charge of Failure to Identify for
> Ms. Lopez. . .
>
> Ms. Lopez was transported to the Inmate Processing Center
> to prevent any further incidents. . .[17]

The video produced by plaintiff to the defendants shows not
only that plaintiff failed to comply with Deputy Salazar's requests
to produce her identification, but also that she actively and
physically resisted his attempt to take her into custody.[18]
Moreover, the video shows that Deputy Salazar maintained a calm
demeanor throughout the incident, and used only the force necessary
to take the plaintiff into custody.

In addition to restating essentially the same facts stated in
the incident report, Deputy Salazar states in his affidavit that he
is licensed as a peace officer by the State of Texas,[19] and that
plaintiff "did not complain of being injured at any time while she
was in my custody, and did not request EMS.  I did not notice any
injuries at any time on her after I pulled her to the ground in
response to her resistance."[20]

In pertinent part Commander Coons states:

---

[17]Incident Report, Docket Entry No. 17-4, pp. 4-5.

[18]Exhibit 5 to Defendants' Motion for Summary Judgment, Docket
Entry No. 17-9.

[19]Affidavit of Harris County Sheriff's Deputy Francisco
Salazar, Jr. ("Salazar Affidavit"), Docket Entry No. 17-1, p. 1
¶ 2.

[20]Id. at 4 ¶ 11.

[T]he situation for which Deputy Salazar had taken responsibility was a Family Violence issue which is a criminal offense subjecting the aggressor(s) to mandatory arrest.    Deputy Salazar stated at that point, both subjects were being detained while he conducted his criminal investigation to determine which, if either or both parties, may have violated the law.  As Plaintiff Lopez was lawfully detained, Deputy Salazar now demanded her identification; again, Plaintiff [Lopez] refused . . .

At this point, faced with Plaintiff [Lopez's] complete refusal to produce her identification after several entreaties, a demand, an explanation of the consequences and then a subsequent refusal, Deputy Salazar had exhausted reasonable verbal avenues.   Deputy Salazar moved to physically detain Plaintiff Lopez whereupon, " . . . she began to resist." . .

A video shot by an unknown subject inside the Lopez residence at the time of the incident clearly sets forth both Plaintiff Lopez' physical resistance to Deputy Salazar's attempts to arrest her as well as Deputy Salazar's calm demeanor and measured physical measure[s] employed to overcome Plaintiff Lopez' resistance and bring her into custody. . .[21]

. . .

. . . Deputy Salazar had a duty to thoroughly investigate the circumstances of the event to which he was dispatched and the authority to temporarily detain those who may have been responsible for the commission of a crime.   As he was attempting to execute his duties under the *Texas Code of Criminal Procedure* Art. 2.17, and regardless of who may or may not have committed an offense regarding the affray to which he responded, Plaintiff Lopez interfered with those duties by failing to follow the deputy's verbal directions to her to retrieve her identification thus taking her out of the room and facilitating his interview with the daughter,

---

[21]Affidavit of Jay O. Coons, Ph.D., Exhibit 17-2, pp. 4-5 ¶¶ 8-10 (citing Family code, Title 4, Protective Orders and Family Violence; Subtitle A.  General Provisions, Chapter 71. Definitions; § 71.004 Family Violence, and Terry v. Ohio, 88 S. Ct. 1868, 1877-78 (1968)).

Stephanie. Plaintiff Lopez further interfered with Deputy Salazar's duties, while she remained in the room, by interrupting his interview with Stephanie. By making it virtually impossible for Deputy Salazar to interview the various parties to the event, thus compromising his investigation and Deputy Salazar's duty to conduct an investigation, Plaintiff Lopez was in violation of the *Texas Penal Code*, § 38.15 Interference With Public Duties: "(a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with: (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law . . ."

. . . What can be said was Deputy Salazar is the deputy who responded to the call and had the responsibility to render some sanity to the chaos. Especially given the fact both parties, Plaintiff Lopez and Stephanie Lopez, were alleging physical assaults by one party on the other and, as opined by the boyfriend, Jacob Rojas, these violent episodes were not uncommon in the Lopez house, a reasonable officer in Deputy Salazar's position would have almost immediately determined the first order of business, for everyone's safety, was to establish control of the scene and all persons in it. Deputy Salazar was attempting to do just that and, regardless of whether or not his tone could have been more cheery and upbeat, Plaintiff Lopez had a duty to obey his verbal commands and, if not cooperate, at least not interfere with his investigation.

In sum, upon his response to the Lopez residence, Deputy Salazar had a duty to conduct a thorough investigation of the situation and the authority to detain those involved for a reasonable period until that mission was accomplished. Deputy Salazar was also shielded by Texas Penal Code § 38.15 from those who would interfere with his investigation. If, when proceeding on the advice of the on-duty assistant district attorney in the Harris County District Attorney's Office Intake Division, one "ADA Acklin," Deputy Salazar was in error regarding the arrest title he cited, this does not render the arrest without merit. Given the facts set forth in his offense report and as cited here, Plaintiff Lopez was subject to arrest for violation of Texas Penal Code § 38.15, Interference.[22]

---

[22]*Id.* at 11-12 ¶¶ 18-20.

The undisputed facts set forth in both the incident report prepared by Deputy Salazar and in his affidavit establish that Deputy Salazar had probable cause to arrest the plaintiff for interfering with his investigation.  See Tex. Penal Code § 38.15(a)(1).  See Pearlman v. City of Fort Worth, Texas, 400 Fed. App'x 956, 959 & n. 7 (5th Cir. 2010) (per curiam)(examining substantially similar facts and holding that police officer had probable cause to arrest the plaintiff for interfering with an investigation).  The undisputed facts stated in Deputy Salazar's incident report and affidavit as corroborated by the evidence visible in the cell-phone video that the plaintiff provided to the defendants, establish that the plaintiff resisted Deputy Salazar's attempt to take her into custody, and that Deputy Salazar maintained a calm demeanor throughout the incident and used only the force reasonably necessary to take the plaintiff into custody. Moreover, although plaintiff alleges that she suffered "significant" injuries, the undisputed facts establish that plaintiff did not complain of being injured and did not request medical assistance for an injury, and that Deputy Salazar did not notice that she had suffered any injuries.[23]  Because defendants have presented undisputed evidence establishing that Deputy Salazar used only the amount of force reasonably necessary to effect plaintiff's arrest for interfering with an investigation, no

---

[23]Salazar Affidavit, Docket Entry No. 17-1, p. 4 ¶ 11.

-19-

reasonable juror could find that any injuries plaintiff suffered
resulted directly and only from his use of force that was excessive
or objectively unreasonable under the circumstances.  Accordingly,
the court concludes that Deputy Salazar is entitled to judgment as
a matter of law on the § 1983 claims asserted against him in his
individual capacity.

(b)  § 1983 Claims Asserted Against Harris County

Plaintiff alleges claims against Harris County for failure to
train and supervise Deputy Salazar whose actions followed an
unconstitutional policy ordered, sanctioned, and ratified by Harris
County through one or more of its policymakers.[24]  Asserting that
at all relevant times Harris County had in effect a constitutional
policy regarding the use of force, and that there is no evidence
that plaintiff suffered a violation of her constitutional right to
be free from unreasonable seizure due to an excessive use of force,
or that Harris County failed to train and/or supervise Deputy
Salazar on the use of force, Harris County argues that it is
entitled to summary judgment on all of the § 1983 claims asserted
against it in this action.[25]  Because  for the reasons stated in the
preceding section, the court has already concluded that the

---

[24]Plaintiff's First Amended Petition, Docket Entry No. 11,
pp. 5-6.

[25]Defendants' Motion for Summary Judgment, Docket Entry No. 17,
p. 2 ¶ 2.  See also id. at 16-20 ¶¶ 28-39.

defendants have presented undisputed evidence establishing that Deputy Salazar used only the amount of force reasonably necessary to effect plaintiff's arrest for interfering with an investigation, and that no reasonable juror could find that any injuries plaintiff suffered resulted directly from his use of force that was excessive or objectively unreasonable under the circumstances, Harris County cannot be held liable for failing to train and supervise Deputy Salazar, for ratifying his use of force, or for maintaining a policy or custom that lead to a deprivation of plaintiff's constitutional rights.   Accordingly, the court concludes that Harris County is entitled to summary judgment on all the § 1983 claims that plaintiff has asserted against it in this action.   See Monell, 98 S. Ct. at 2037-38.

## B.   State Law Claims

Plaintiff asserts claims against Deputy Salazar and Harris County for personal injuries under Texas law.   Municipalities and political subdivisions such as Harris County have governmental immunity except where the state legislature has waived that immunity in the Texas Tort Claims Act (TTCA).   See Tex. Civ. Prac. & Rem. Code § 101.21; Mission Consolidated Independent School District v. Garcia, 253 S.W.3d 653, 655 (Tex. 2008).   The limited waiver of governmental immunity provided by the TTCA is for claims arising from the use of publicly owned vehicles, premises defects, and injuries arising out of conditions or use of property.   Garcia,

-21-

253 S.W.3d at 655.   The Texas Supreme Court has held that all common law tort claims alleged against a governmental unit are presumed to be governed by the TTCA regardless of whether the TTCA waives immunity for a particular claim.   Franka v. Velasquez, 332 S.W.3d 367, 378 and 385 (Tex. 2011).   The TTCA does not waive immunity for intentional torts, such as assault, battery, false imprisonment, and false arrest.   See Tex. Civ. Prac. & Rem. Code § 101.057(2).   See also Franka, 332 S.W.3d at 376 & n. 35. Moreover, if a plaintiff sues both a governmental unit and any of its employees under the TTCA, as plaintiff has done in this case, the claims asserted against the employees are subject to dismissal under Tex. Civ. Prac. & Rem. Code § 101.106(e) if the employee has been sued in his individual capacity and under § 101.106(f) if the employee has been sued in his official capacity.   See Stinson v. Fontenot, 435 S.W.3d 793, 794 (Tex. 2014) (per curiam).

Here, plaintiff sued Harris County and its employee, Deputy Salazar, in both his individual and his official capacity.   "For purposes of the TTCA, an employee is considered to have been sued in his official capacity when the suit (1) is based on conduct within the general scope of his employment, and (2) could have been brought under the TTCA against the government.   Stinson, 435 S.W.3d at 794.   Defendants assert that plaintiff's claims against Deputy Salazar are based on conduct that occurred within the scope of his employment, and plaintiff alleges that her claims against Deputy Salazar are in fact based on conduct within the general scope of

his employment.[26] Moreover, plaintiff has asserted the same claims against both Deputy Salazar and Harris County. Deputy Salazar is therefore entitled to summary judgment on the TTCA claim asserted against him in his individual capacity under Tex. Civ. Prac. & Rem. Code § 101.106(e), and is entitled to summary judgment on the TTCA claim asserted against him in his official capacity under Tex. Civ. Prac. & Rem. Code § 101.106(f). Id. See also Pearlman, 400 Fed. App'x at 959 (citing Pearlman v. City of Fort Worth, Texas, Civil Action No. 4:08-cv-393-A, 2008 WL 4787650 (N.D. Tex. October 30, 2008)).

Any state law claim that plaintiff is attempting to assert against Harris County fares no better. A Texas county is a "governmental unit" covered by the TTCA. Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). The TTCA does not apply to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057(2). This means that plaintiff's state law claim for personal injuries against Harris County does not fall within the limited waiver of governmental immunity provided by the TTCA, and is thus precluded by Harris County's immunity as a governmental entity. See Pearlman, 400 Fed. App'x at 959. Accordingly, Harris County is entitled to summary judgment on the state law claim that plaintiff has asserted or attempted to against it.

---

[26]Plaintiff's First Amended Petition, Docket Entry No. 11, pp. 5-6.

### IV. Conclusions and Order

For the reasons explained above the court concludes that the defendants are entitled to summary judgment on all of the claims asserted against them in this action.   Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 17), is **GRANTED.**

**SIGNED** at Houston, Texas, this 7th day of October, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE